PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PRESSMAN, | ) | CASE NO. 5:07CV03827 |
| Plaintiff, | ) | |
| | ) | JUDGE ECONOMUS |
| | ) | MAGISTRATE JUDGE PEARSON |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Michael Pressman sought judicial review of the Social Security Administration's final decision denying his applications for Supplemental Security Income and Disability Insurance Benefits (collectively "benefits").

Finding that the ALJ's decision denying benefits is supported by substantial evidence, this Court recommends that the Social Security Administration's ("Agency") final decision be affirmed and that the referral to the undersigned Magistrate Judge be terminated.

### I. Overview

Pressman was 40 years old when the ALJ issued his decision. He has a "greater than high school" level of education. ECF No. 14 at 2. He testified that he attended the University of Akron and called himself a "Junior." He believes the last time he attended classes was in 2001 or 2002, at which time he "ran out of funds." (Tr. 648.) Pressman's past relevant work experience includes work as a shift leader, a server, a bartender, and an assembler. ECF No. 14

(5:07cv3827)

at 2.

Pressman alleges he has been disabled since June 30, 2001, due to chronic pain in the lower back, neck, and shoulders; a bipolar disorder; mood swings; a post traumatic stress disorder; depression; and a memory impairment. *Id.* Despite his alleged claims of disability, however, Pressman admitted at his hearing before the ALJ that he is able to work. A vocational expert corroborated Pressman's ability to work and identified a significant number of jobs in the regional and national economy that would accommodate Pressman's limitations.

## II. Procedural History

Pressman applied for Disability Insurance Benefits and Social Security Insurance on June 12, 2002, alleging he had been disabled since June 30, 2001. (Tr. 65-67, 577-79.) His applications were denied initially and upon reconsideration. Pressman subsequently requested a hearing before an Administrative Law Judge ("ALJ"). On June 21, 2005, Pressman, his counsel, and Nancy Borgeson, a vocational expert, appeared for the hearing before the ALJ. ECF No 18 at 2.

The ALJ found that Pressman was not disabled and, accordingly, not eligible for benefits. Following the ALJ's denial, the Appeals Council denied review prompting Pressman to timely appeal to this Court.

Pressman presents the following sole assignment of error:

1. Whether the finding that Mr. Pressman can perform substantial gainful activity is supported by substantial evidence?

ECF No. 14 at 2.

(5:07cv3827)

### III. Standard of Review

Judicial review of the ALJ's decision denying disability benefits is limited to determining whether there is substantial evidence to support the denial decision and whether the Secretary properly applied relevant legal standards. *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989), *(citing Richardson v. Perales*, 402 U.S. 389 (1971)). Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence. "Substantial evidence is more than a scintilla of evidence, but less than preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).

In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 535, 536 (6th Cir. 1981)*; Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528. 535 (6th Cir. 2001). The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion. See *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *See also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts. *Mullen,* 800 F.2d at 545 (6th Cir. 1986). The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Id.* The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or

3

(5:07cv3827)

decide questions of credibility. *See* Brainard, 889 F.2d at 681; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

### IV. Law and Analysis

An ALJ follows a five step sequential process to determine whether the claimant is disabled. At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he or she does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement.[1] A claimant is disabled if he or she has an impairment that meets the listing and the duration requirement. *Before* considering the Fourth Step, the ALJ must determine the claimant's residual functional capacity – the claimant's ability to perform physical and mental work on a sustained basis despite limitations from impairments. At Step Four, the ALJ considers whether the claimant's residual functional capacity permits him to perform past relevant work. A claimant is not disabled if he can perform past relevant work. At the final step, Step Five, the ALJ considers the claimant's residual functional capacity and his age, education, and work experience to determine whether the claimant may work. A claimant is disabled if he or she is unable to work. *See* 20 C.F.R. § 404.1520(a)(4).

---

[1] *See e.g.*, 20 C.F.R. Part 404, Subpart P, Appendix 1.

4

(5:07cv3827)

A.     **Pressman Testified That He is Capable of Working**

In gathering information to determine Pressman's functional limitations (just before Step Four), the ALJ asked Pressman if he could "handle" returning to school.  Pressman responded by not only agreeing that he could attend school but that he could work.  The colloquy between Pressman (identified as "P") and the ALJ follow:

> ALJ:   [Y]our therapist here . . . they're saying that they're encouraging you to find a job that you can handle and get money and return to college.
>
> P:     I've been trying to get back to school but I can't. . .
>
> ALJ:   But that seems to suggest to me that they think you could handle something like that?
>
> P:     Yeah.  I could probably handle going, you know, going to school is not that bad because you know, you just kind of zone in and –
>
> ALJ:   Um-hum
>
> P:     . . . focus on the teacher.  You don't have to relate with people.  *And I'm not saying I can't work*.  (emphasis added) It's just holding a job and it's like I have, I just have problems with, you know, dealing with the atmosphere, the people interacting with the people.  It's, I'm paranoid.  I think the people are, you know, out to, you know, like at the restaurant, you know, I would think people were trying to take my tables and stuff and then I would get in, you know, it just, it's hard for me to explain.  I'm not a doctor.

(Tr. 642.)  Rather than end the analysis here and find that Pressman is able to work, the ALJ proceeded to complete Steps Four and Five.[2]

---

[2] It is important to note that the ALJ found that Pressman has limitations which restrict his ability to work.  (Tr. 20.)

5

(5:07cv3827)

**B.     The ALJ's Decision Misstates the Vocational Expert's Testimony**

In determining whether Pressman could complete his past relevant work at Step Four of the analysis, the ALJ elicited testimony from the Vocational Expert.[3] This case presents the unusual circumstance of the ALJ crediting (in his written decision) the Vocational Expert with a statement different from that reflected in the transcript. The ALJ writes that the Vocational Expert testified that Pressman could return to his past job as a server; the transcript shows the Vocational Expert said Pressman cannot.

Pressman essentially argues that the ALJ's mis-statement of the Vocational Expert's testimony is the reason the ALJ found that Pressman is not disabled.[4] The Court disagrees. The ALJ conducted the complete five-step analysis before concluding that Pressman was not disabled. The analysis is a well-articulated eight-page written decision that contains a flaw. The error, however, appears to be in the ALJ's opinion-writing not the overall analysis.

The transcript reflects an exchange during which the ALJ and Vocational Expert appear to speak in less than complete sentences and, at times, appear to talk simultaneously. The ALJ posed the following hypothetical and the Vocational Expert responded.

---

[3] Generally, it is within the province of the ALJ to determine whether to rely on the testimony of a vocational expert. *See Sias v. Sec'y of Health and Human Servs*, 861 F.2d 475, 480 (6th Cir. 1988) ("[i]t is the Secretary's job to evaluate the trustworthiness of a vocational expert's testimony). Such findings by the ALJ are typically entitled to substantial deference upon review. *See King v. Heckler*, 742 F.2d at 975 (6th Cir. 1984).

[4] Pressman's sole issue presented asks a broader question: whether the ALJ's finding that Pressman can work, *i.e.,* be gainfully employed, is supported by substantial evidence. As explained below, the answer is affirmative.

(5:07cv3827)

ALJ: The Claimant's a younger person under the categories of the Social Security regulations, has more than a high school education, does not have difficulty with communication. I see that the DDS suggested a medium. I think that that's a little high. Lets talk about a light, residual functional capacity for light work subject to no ropes, ladders or scaffolds and with some limitations on brief and superficial contact with the public, co-workers and moderately limited in the ability to maintain attention, concentration and pace for extended periods and also with detailed instructions I don't think would have significant problems with - -

VE: Actually what was the last part of that?

ALJ: Limited number of detailed instructions - -

VE: Um-hum.

ALJ: But wouldn't be likely to have significant problems with low level, even semi - skilled. They will carry out tasks in situations. Their duties are relatively static and changes can be explained is what it says here. So with that in mind, could such a person perform the Claimant's past work either as actually performed or as customarily performed in the national economy?

VE: *No.* No, I'm not sure I got your last limitation, certainly about changes.

ALJ: Well, things are relatively static.

VE: Yeah, okay.

ALJ: Things are relatively static. Any changes can be explained.

VE: All right.

ALJ: But the duties are relatively static. So why wouldn't he be able to do these jobs at light as they are customarily performed?

VE: Well there'd be more than brief superficial contact in terms of

(5:07cv3827)

>   - -
>
>   ALJ: Okay.
>
>   VE: - - both as bar tender and as - -
>
>   ALJ: All right.
>
>   VE: - - *server*.
>
>   ALJ: All right.
>
>   VE: And the assembler was actually medium work.
>
>   ALJ: Right, I understand. Yeah. Okay. . .

(Tr. 649-50.) The ALJ's response indicates that he understood that Pressman could no longer bartend or serve, *i.e.,* that Pressman could not perform his past relevant work (Step Four).[5] He then appropriately pressed on by asking the next logical question: Is there other work Pressman can perform (Step Five)?

>   ALJ: . . . Then taking the limitations I've given you for a person of the same age, education and work experience, would there be other jobs in the regional or national economy that such a person could perform?
>
>   VE: Well there would be looking at light, un-skilled level, such a person could be an assembler of small parts which is light and un-skilled. That's DOT number 706.684-022 and Northeast Ohio they have approximately 10,000 such jobs, almost 50,000 in the State and over 752,000 nationally. Such a person could be a cleaner, housekeeping which is DOT number 323.684-014. Northeast Ohio in the light, un-skilled level there are approximately 1,800 such jobs, 9,000 in the State and over 256,000 nationally. And such a person could

---

[5] This lends credence to the Court's belief that the ALJ's error is one of opinion-writing not analysis.

(5:07cv3827)

>           be a parking lot attendant which is DOT number 915.473-010.
>           In Northeast Ohio, approximately 400 such jobs. Over 2,1000
>           in the State an approximately 53,000 nationally.
>
> ALJ:      Okay. Is your testimony considering the classification you've
>           described consistent with the Dictionary of Occupational
>           Titles?
>
> VE:       Yes it is.
>
> ALJ:      Any other sources that you reply on for opinion here today
>           such as the number of jobs that you've given me?
>
> VE:       Well personal experience. So I referred to the Bureau of
>           Labor Statistics for numbers.

(Tr. 649-50.)

Against this backdrop, Pressman challenges whether the ALJ's finding that Pressman can work, *i.e.*, be gainfully employed, is supported by substantial evidence. The answer is yes. Pressman's testimony that he can work coupled with the Vocational Expert's identification of a significant number of jobs in the regional and national economy that will accommodate Pressman's functional restrictions render any error in a hypothetical or mis-statement of the Vocational Expert's testimony irrelevant.[6] (Tr. 23, 650-51.) *See Curry v. Sullivan*, 925 F.2d 1127, (9th Cir.1990) (whether or not the ALJ erred in not including all of [claimant's] limitations in a hypothetical is thus irrelevant given the other reliable evidence); *Matthews v. Shalala*, 10 F.3d 678, (9th Cir. 1993) (same).

The issue remaining before the Court, however, is whether the ALJ's mistaken belief that

---

[6] The Commissioner argues that the Vocational Expert's testimony "does not show that [Pressman] could not perform [his] past relevant work" because of the limitations posed in the ALJ's hypothetical. ECF 18 at 8. The Court is not persuaded by this argument.

9

(5:07cv3827)

Pressman could perform his past relevant work created error that demands a remand.

### C. Harmless Error Analysis

The Sixth Circuit has found that the harmless-error rule applies in the Social Security context. *Masters v. Astrue*, 2008 WL 4082965, *3 (E.D.Ky.2008), *(citing*, *Heston*, 245 F.3d at 535 (6th Cir.2001)) (failure to explain weight given to treating physician is not reversible error where ALJ's opinion is nonetheless supported by substantial evidence and error was harmless.); *cf Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2004) ("a procedural error is not made harmless simply because [the aggrieved party] appears to have had little chance of success on the merits anyway."). Nonetheless, courts apply a harmless error analysis cautiously, taking care to avoid rewriting an ALJ's decision *post hoc* even when substantial evidence exists to support the ALJ's decision. This mantra is tempered, however, by the wizened practice of avoiding setting aside an administrative finding where a "deficiency in opinion-writing had no practical effect on the outcome of the case." *Forte v. Barnhart*, 377 F.3d 892, 895-896 (8th Cir. 2004) (ALJ opinions need not be flawless).

Undoubtedly, error free decisions are preferred. Failing to achieve such a high calling is not, alone, grounds for reversal or remand. The regulations governing the decisions issued by ALJ's demand that the ALJ prepare a "written decision that explains in clear and understandable language the specific reason for the decision." 20 C.F.R. § 405.371(a). "The decision must be based on evidence offered at the hearing or otherwise included in the record." 20 C.F.R. § 416.1453(a). There is no pre-established template with which an ALJ's written decision must comply.

(5:07cv3827)

In the instant case, the ALJ devoted over five of the eight single-spaced pages of his written decision to evaluating the evidence presented. In so doing, the ALJ completed the obligatory five-step analysis and concluded (1) that Pressman is capable of working, (2) that there exists a significant number of jobs in the regional and national economy that he can perform, and (3) that Pressman could perform his past work as a shift leader server.[7] (Tr. 23, 24.) The last finding is problematic because it contradicts the testimony of the Vocational Expert.

The Court finds that the ALJ committed error when he found that Pressman could perform his past relevant work as a shift leader server. (Tr. 23.) Contrary to Pressman's assertions, however, the ALJ's error was harmless because it was not the sole reason Pressman was denied disability benefits.[8] In fact, the ALJ's decision relies very little on this mis-statement (at Step Four) and focuses more appropriately on the remainder of the record, including the Vocational Expert's testimony (at Step Five) that there are jobs available regionally and nationally that will accommodate Pressman's limitations and Pressman's earlier admission that

---

[7] Pressman mistakenly argues that the ALJ ended his analysis after completing Step Four. ECF No. 14 at 7. This is incorrect and counterintuitive given that the Vocational Expert's testimony (which Pressman takes issue with) occurred at Step Five.

[8] In a similar case, the Eighth Circuit affirmed a denial of benefits although the hypothetical posed to the Vocational Expert in the social security disability proceedings understated claimant's limitations in interacting with others and did not incorporate the medical expert's assessment that claimant was markedly limited in his ability to respond appropriately to work pressures, such infirmity was harmless, because the Vocational Expert testified that even with the additional limitations in social interaction, claimant could perform jobs available in the economy. See *England v. Astrue,* 490 F.3d 1017, 121 Soc. Sec. Rep. Serv. 482 (8th Cir. 2007).

(5:07cv3827)

he can work.[9] [10]  The ALJ found that, "as a result of these findings the undersigned concludes the claimant does not meet the statutory criteria for a finding of disability." (Tr. 24.)  Thus, the ALJ took into account the his entire analysis in finding that Pressman is not disabled and, therefore, is not entitled to disability benefits.

The Court finds that the ALJ's determination that Pressman could perform past relevant work was harmless error abrogated by Pressman's admission that he could work and the ALJ's reliance on the Vocational Expert's testimony that Pressman can perform other work.  Pressman acknowledged the latter point in his brief when he wrote that the ALJ's completion of Step Five of the sequential evaluation would have rendered an error at Step Four harmless.[11]

---

[9] A Vocational Expert's testimony can constitute substantial evidence to support the Secretary's findings that a claimant is capable of performing a significant number of jobs in the economy.  *See* Bradford v. Sec'y of Dep't of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam).  Ultimately the determination of whether a particular number of jobs is significant should be left to the fact finder's common sense in weighing the statutory language as applied to particular situations.  Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988); *see also* Harmon v. Apfel, 168 F.3d 289 (6th Cir. 1999)

[10] The ALJ concludes his decision with a summary/list of "Findings" that does not include the identification and number of jobs the Vocational Expert found for Pressman. The ALJ is not required to provide such a list.  Nonetheless, a complete list would have been preferred, even though it would have been redundant of the analysis in the previous seven pages. The Court finds that the truncated list does not detract from the detailed analysis that proceeds it.

[11] Pressman wrote that "[h]ad the ALJ conducted a Step Five analysis to determine whether [the claimant] could perform other jobs in the national economy, the error [in evaluating the claimant's ability to return to past relevant work at step four] might be harmless."  ECF No. 14 at 8.  The Court concurs.  For reasons not clear to the Court, Pressman continues on to argue that the ALJ's error at Step Four estops him from completing Step Five of the analysis. Pressman has not, however, presented legal authority to support this conclusion. To the contrary, he cites Getch v. Astrue, 539 F.3d 473, 480 (7th Cir.2008), a case in which the ALJ *did* correct a Step Four error at Step Five.

(5:07cv3827)

The undersigned finds that an error that "has no bearing on the substance of the ultimate decision" provides no basis for reversal or remand. *Masters*, 2008 WL 4082965 at *3; *Stewart v. Comm'r of Soc. Sec.*, 2009 WL 877718, (E.D.Mich. 2009).

### V. Recommendation

The ALJ's determination that Pressman is not disabled and can perform substantial gainful activity is supported by substantial evidence. The Court recommends that the ALJ's decision be affirmed in its entirety and that the referral to this Court be terminated.

|  | /s/ Benita Y. Pearson |
|---|---|
| Dated: June 18, 2009 | United States Magistrate Judge |

### OBJECTIONS

Objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).